BOYD *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES.

1. INSURANCE—GROUP POLICY—TOTAL AND PERMANENT DISABILITY
BENEFITS—EMPLOYMENT—PREMIUMS.

In employee's action for total and permanent disability benefits
under group insurance policy, insurance certificate *held,* in
force for period during which plaintiff paid premiums notwith-
standing he was not actually working for employer after period
of nearly two years during which he was steadily employed.

2. SAME—PERMANENT INJURY—BURDEN OF PROOF.

Employee, seeking to recover total and permanent disability
benefits under group insurance policy, has burden of proving
that permanent disability developed before certificate of insur-
ance lapsed.

3. APPEAL AND ERROR—REVIEW OF NON-JURY LAW CASE—EVIDENCE.

On appeal in non-jury law cases Supreme Court's policy is not to
disturb trial court's determinations of issues of fact if they
can be sustained by the testimony fairly and reasonably con-
strued.

4. INSURANCE—TOTAL AND PERMANENT DISABILITY—EVIDENCE.

Evidence *held,* insufficient to establish that employee suffered
total and permanent disability while group insurance certifi-
cate was in force as result of having been overcome by being
exposed to aniline dye fumes over five months before certificate
lapsed for nonpayment of premiums.

---

[*] Continued from Vol. 273.

5. SAME—AFFLICTION WITH DISEASE RESULTING IN TOTAL AND PER-
    MANENT DISABILITY AFTER LAPSE OF POLICY.

    Evidence that while group insurance certificate was in force em-
    ployee became afflicted with tuberculosis resulting in total and
    permanent disability after certificate lapsed *held*, insufficient
    to entitle him to total and permanent disability benefits under
    group policy.

Appeal from Wayne; Campbell (Allan), J. Submitted October 9, 1935. (Docket No. 32, Calendar No. 38,520.) Decided December 10, 1935.

Assumpsit by Albert C. Boyd against the Equitable Life Assurance Society of the United States, a New York corporation, for benefits under a total and permanent disability clause of an insurance policy. Judgment for plaintiff. Defendant appeals. Reversed.

*Theodore R. Robbins* (*George F. Curran,* of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

NORTH, J. From the latter part of 1930 until about September 1, 1932, plaintiff, Albert C. Boyd, was employed by the United States Rubber Company. He was then laid off on account of slack work. He again worked for the same employer for a period of three days about the middle of December, 1932; but the work he was then required to do was too hard for him and his employment ceased. The Equitable Life Assurance Society of the United States, defendant herein, was the insurer under a group policy covering certain employees of the United States Rubber Company. On April 1, 1931, defendant issued to plaintiff an individual certificate of insurance under the master policy. The mate-

rial portions of plaintiff's certificate are printed in the margin hereof.* The instant suit is one in assumpsit based on a claimed breach of the contract of insurance. Plaintiff alleges that during his employment with the United States Rubber Company he developed tuberculosis of the lungs and that as a result thereof and before he attained the age of 60 years he became totally and permanently disabled while his individual certificate of insurance was in force, and that he is entitled to recover under the total and permanent disability provision of the policy. In its defense the insurance company asserts that the policy had lapsed prior to the time plaintiff became totally and permanently disabled; and further that plaintiff did not furnish proof of his total and permanent disability as required by the terms of the policy, and that furnishing such proof is a condition precedent to liability. Relative to the latter defense, plaintiff asserts that such proofs were waived by the defendant insurance company. This appeal is from a judgment in favor of plaintiff entered in the circuit court after trial without a jury.

---

* Individual Certificate.

"The insurance of any employee shall automatically cease and determine * * * upon the termination of employment with the employer in the specified classes of employees. * * *

"This individual certificate is furnished in accordance with the terms of the said Equitable group insurance policy, which policy together with the employer's application therefor constitute the entire contract between the parties."

Total and Permanent Disability Provision, Contained in Within Mentioned Policy.

"If proof shall be furnished the society that any employee insured under the aforesaid policy has before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupation, the society will pay six months after receipt of such proof in full settlement of all obligation under the said policy pertaining to such employee, the full amount of the insurance on such life."

The group insurance policy provided that the employer might elect that all employees who, while insured, were temporarily laid off or given leave of absence or temporarily disabled, might be considered for the purposes of the insurance contract as still being employed by the company holding the group policy. Evidently acting under this provision, plaintiff continued to pay the premiums on his insurance and the same were accepted for the months of September, October and November, 1932. Hence, as admitted by defendant, plaintiff's insurance was in force to and including November 30, 1932.

As noted above, plaintiff took his certificate of insurance April 1, 1931. He was normally healthy, so far as the testimony discloses, until June 21, 1932, when he was overcome by being exposed to aniline dye fumes while working in one of his employer's oil tanks. This necessitated plaintiff's being sent to a hospital where he remained a week and was away from his employment for a month. From that time on plaintiff consulted various physicians and on March 7, 1933, he was advised that he had tuberculosis. Thereupon he entered a hospital and later was transferred to the Leland Farm Sanatorium, in which institution he was still a patient at the time of the trial, and unquestionably he was then totally and permanently disabled. It is plaintiff's contention that his injury of June 21, 1932, so affected his lungs that tuberculosis set in at once; and that he became totally and permanently disabled prior to the time his policy lapsed. As noted above, defendant contends plaintiff did not become totally and permanently disabled prior to the expiration of the certificate issued to him. The trial judge decided this issue of fact in favor of plaintiff; and on appeal

the question is presented whether such finding is sustained by the testimony. We quote it somewhat at length. Plaintiff's testimony contains the following:

"Previous to June, 1932, I had never been treated for tuberculosis. I was never sick. * * * At the time I went into the red oil tank I weighed around 140 or 150. I now weigh 134, having gained 16 pounds in the last two months. I do not recall, but I think that I weighed about 125 in December, 1932. I started losing weight in June, 1932, right after I got poisoned. I think I was down about 15 or 20 pounds by December of that year. * * * The last day I worked was in December, 1932. * * * My physical condition was such that I could not handle the work. I cannot do any work at the present time. I can hardly walk across the street. * * * In November I told him (Mr. Brennan, employer's compensation and insurance representative) that I wasn't doing no good, I needed some treatment, but I didn't get it. * * * Well, I was just laid off (December, 1932).

"*Q.* (*Direct examination*) In November of 1932 were you able to do some work, or were you able to do the same work that you had been hired to do at the United States Rubber Company?

"*A.* No, sir.

"*Q.* What was your condition?

"*A.* Very poor.

"*Q.* Were you weak?

"*A.* Run down."

Dr. Albert Krohn was sworn as a witness in behalf of plaintiff. He testified:

"Mr. Boyd, when he entered our hospital in March of 1933, was suffering from tuberculosis. It was moderately advanced. * * * My diagnosis was that it was tuberculosis of the upper and middle third of the right lung * * * . The case was

chronic rather than acute. His condition had in all
probability preceded my seeing him from 5 to 15
years. I don't know whether I could definitely tell.
A man in his condition could do manual labor. * * *
Oh, he could do manual work. * * * A lot of cases
of his type that are walking on the street, and work-
ing today. They do not know that they have tuber-
culosis. Now, those things do endanger their life.
* * * One could have a hemorrhage any time in
a condition of that sort. * * * His is a scarring
case, and you do not get infiltration on the other
side. It remains on one side. That type usually
clears up. * * * Mr. Boyd's weight was 122
pounds when he entered our hospital. It was 114
when he left. He gained weight when he first came
in, his weight going up to 128, and then it went
down. His low point was 104. The time covered
was from April until August (1933). It (gas poison-
ing) might be a superinducing cause of active tuber-
culosis if a man was subjected to some irritation
in the pulmonary cavity. * * * One lung was
normal, *i. e.* negative, when he entered my hospital.

"*Q.* (*Cross-examination*) In your opinion, in
March, 1933, when you first saw Mr. Boyd, was he
then totally and permanently disabled? * * *

"*A.* No, he was totally but not permanently."

Dr. Carl C. Birkelo, another witness produced by
plaintiff, testified that he was a specialist in
roentgenology and upon examining X-ray plates of
plaintiff's lungs made in March, 1933, he stated:

"The plates show tuberculosis. * * * I cannot
tell from an examination of these plates whether the
man had had tuberculosis from 5 to 15 years. I
don't believe any doctor could tell that. It is im-
possible to say with positiveness whether or not the
patient had had tuberculosis for six months. * * *
It is possible that exposure to those fumes could
have started tuberculosis, started the tuberculosis
germ working and * * * put the lung in such a

condition that it was very susceptible for a condition
of this kind.  *  *  *  When one breathes gas it is
exactly the same as air insofar as it enters both
lungs. I don't think that breathing gas has any-
thing to do with tuberculosis at all, but if it did have
it would not necessarily affect both lungs.

"*Q.* (*Cross-examination*)  Are you able to state
to the court from that X-ray picture there (indicat-
ing) that the plaintiff in this case was totally and
permanently disabled in November of 1932, assum-
ing that the picture was taken in March of 1933?

"*A.* Well, as to permanent disability—you mean
that he was absolutely on his back and unable to
proceed? I have seen these people working, not
knowing that they had tuberculosis, up to a very late
stage. I could not say in any sense that he quit work
on account of it. If he is unaware of the disease, he
kept on working; that is possible. (*Redirect ex-
amination*) It is also possible that a man could be
incapacitated and permanently disabled in that con-
dition. It is also certainly true that if a man in that
condition continued working at hard work it would
necessarily follow that his life would be shorter than
if he was given proper rest and medical attention."

The defendant produced as a witness in its behalf
Dr. Grover C. Penberthy, a physician who examined
the plaintiff at the Michigan Mutual Hospital soon
after he was exposed to the aniline dye fumes,
June 21, 1932. The doctor testified:

"On admission he shows cerebral irritation. It
was necessary to put the patient in restraining
straps.  *  *  *  I was contacted again by Mr. Boyd
on December 15, 1932, in the follow-up clinic at the
Michigan Mutual Hospital. At that time he (plain-
tiff) stated that he was still a little weak.  *  *  *  I
don't believe I could speculate from my examination
whether he was going to be totally disabled. He
stated he was still a little weak.  *  *  *  It might be
a little difficult from an examination of the sort I

made to state whether or not he was totally and permanently disabled. He stated that he was still a little weak. * * * My record does not show anything about work and I could not say from my examination whether this man was totally and permanently disabled or not." .

Dr. James S. Smith, a witness for the defendant, testified:

"When Mr. Boyd came to me (June 21, 1932) he said he had complained of an inability to get his breath at times and also stated that at times his heart seemed to go slow and at other times it pounded and went fast. I prescribed no treatment for him. From the examination that I made it would be impossible for me to determine whether he was tubercular or not. * * * He did not complain of pain that I have any record of. He complained of his inability to get his breath at times. * * * I am still of the opinion that this man was not totally and permanently disabled when I last examined him (September 16, 1932). A person suffering from tuberculosis in an advanced stage would not necessarily be totally and permanently disabled, although it is possible that he might be. In my best opinion at the time of the examination I thought the man was able to work."

It is stated in appellee's brief that: "Counsel for plaintiff and appellee agree that there must be a permanent injury developed before the policy lapsed." Concededly the burden of establishing this factual aspect of the case was upon plaintiff. We have quoted above literally or in substance all the testimony in the record relevant to this issue. On appeal in non-jury law cases it is the established policy of this court not to disturb determinations of issues of fact by the trial court when such deter-

minations can be sustained by the testimony fairly and reasonably construed. But careful consideration of the testimony in the instant case fails to disclose a reasonable basis for holding that plaintiff became totally and presumably permanently disabled prior to November 30, 1932, the date on which his insurance expired. The fact that from the testimony it is a reasonable, and possibly a necessary, conclusion that plaintiff was totally and permanently disabled at the time of the trial or even at the time he entered Leland Farm Sanatorium (December 21, 1933) cannot be held sufficient to establish plaintiff's total and permanent disability more than a year prior thereto when his insurance lapsed. Nor does his entry to the General Hospital March 8, 1933, on account of his tubercular affliction establish total and permanent disability at or prior to the expiration of his certificate of insurance. If from such circumstances it were otherwise possible to indulge in an inference that plaintiff was so disabled, the inference is clearly overcome by positive testimony produced in behalf of plaintiff, as well as other testimony in the case.

It is not sufficient under the terms of the policy here involved to establish that during the time plaintiff's certificate was in force he became afflicted with a disease which subsequent to the lapse of his certificate resulted in his being totally and permanently disabled.

"The mere fact that a disease has its origin during the period covered by insurance is not sufficient to sustain an action on the policy; the disease must have reached a stage permanently and totally disabling the insured, while his policy is in force." *Equitable Life Assurance Society* v. *Singletary* (C. C. A.), 71 Fed. (2d) 409, citing several cases.

See, also *Grate* v. *United States* (C. C. A.), 72 Fed. (2d) 1; and *Boozer* v. *Equitable Life Assurance Society*, 206 N. C. 848 (175 S. E. 175).

Under the record before us it must be held plaintiff has failed to prove that his total and presumably permanent disability developed during the period his insurance was in force. For that reason the judgment entered in the circuit court must be vacated and the case remanded for the entry of judgment in accordance herewith. In view of the above it becomes unnecessary to consider other questions presented.

POTTER, C. J., and TOY, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.

