*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN MICHAEL ROGERS,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2025
3:32 PM

No. 364306
St. Clair Circuit Court
LC No. 21-001883-FC

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of assault with intent to commit criminal sexual conduct (CSC) involving sexual penetration, MCL 750.520g(1).[1] The trial court sentenced defendant to one year time served and five years' probation. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's conviction arose from his attempted sexual assault of his then-wife in fall 2018. Defendant and the victim were married for more than two decades, and the two lived together with their four children. The victim testified that defendant was angry and controlling and, as the years passed, became increasingly aggressive and forceful about their sexual relationship. From about 2016 to 2020, their marriage fell apart. The victim testified that by 2017, nearly all of her sexual encounters with defendant resulted from defendant forcing himself on her or her giving into his demands for sex to appease him and avoid his anger. By spring 2018, the victim was no longer willing to give in to defendant's demands for sex and informed him that she would no longer have an intimate relationship with him. She eventually filed for separation in

---

[1] Defendant was also charged with third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (use of force or coercion to accomplish sexual penetration), but the jury could not reach a verdict on that charge.

-1-

2019. The victim and defendant ultimately divorced in May 2020, approximately a year and a half before the charges in this matter were filed.

The victim testified that in fall 2018, defendant attempted to initiate sex by touching her as they lay in bed. The victim told defendant, who was unclothed, that she was "not doing this," but defendant "just got on top of" her and attempted to penetrate her vagina with his penis. The victim flipped back and forth to get away from defendant, but the victim was trapped underneath him because he had pressed his bodyweight onto her and placed his arms on either side of her body. The victim repeatedly told defendant to stop, but he continued to touch her legs, hips, and pelvis with his penis as he attempted to penetrate her vagina. Defendant was ultimately unsuccessful because he ejaculated before penetrating her. Defendant eventually got up to go to the bathroom, so the victim grabbed her clothes, messaged her friend, and left the house. Upon arriving at her friend's house, the victim told her friend what had happened, and she slept at her friend's house that evening. The victim's friend testified that she recalled the victim being very emotional and upset at that time.

In addition to the victim's testimony regarding the attempted sexual penetration, the trial court, over defendant's objection, allowed the prosecution to introduce other-acts evidence. The victim described two specific instances of unwanted touching by defendant that occurred before she separated from him and moved out of the marital home; the first occurred in spring 2018 before the attempted sexual penetration, and the second occurred in fall 2018 after the attempted sexual penetration. During the first instance, defendant grabbed the victim's breasts and vagina under the water while they were in a hot tub with their minor daughters. The victim pushed defendant's hands away to get him to stop, but he would not, so she eventually got out of the hot tub to get away from him. The victim described this instance as the "last straw" that prompted her to tell defendant she would no longer have an intimate relationship with him. During the second instance, the victim had awoken to defendant shining a flashlight down her shirt and touching her breasts. The victim explained that, following the attempted sexual penetration in fall 2018, she no longer felt safe sleeping in the same bed as defendant, so she began sleeping in the den or the living room. Despite this, however, the victim on most nights awoke to defendant attempting to remove her clothes or raise her shirt, looking down her raised shirt with a flashlight, and touching her breasts. The victim stated that this instance made her realize that she was not safe anywhere in the marital home and prompted her to save up enough money to move out, which she subsequently did in August 2019. The victim and an investigating officer testified that the victim did not disclose these instances or the attempted sexual penetration to the police until August 2021 when the police, while investigating an unrelated CSC, had contacted her.[2]

---

[2] The jury also heard testimony regarding defendant's alleged sexual assault of the victim in fall 2017. According to the victim, while she was in the bathroom talking to defendant, he shut and locked the door, removed her pants, and forcibly penetrated her vagina with his penis, over her objections. The victim also reported this incident to the police in August 2021 when they first reached out to her, and defendant was charged with CSC-III for this incident. As noted, however, the jury ultimately could not reach a verdict on this charge.

The investigating officer testified that he interviewed defendant in August 2021 about the victim's allegations against him, and a video of defendant's interview recorded by the officer's body-worn camera was presented to the jury as evidence. During his interview, defendant did not deny the victim's allegations and admitted that he had pursued her in an inappropriate way in the past and had promised her that he would not do that again. He claimed that it never happened again.

Defendant's primary theory at trial was that the victim fabricated the allegations to obtain a more favorable divorce judgment. To present this theory, defendant relied heavily on cross-examination of the prosecution's witnesses and closing argument. The defense also presented the testimony of defendant's longtime friend, who largely opined on the reputation for truthfulness of the victim's friend who had testified previously. And defendant testified on his own behalf. Defendant admitted that his and the victim's marriage had deteriorated over time and that he and the victim were often not "on the same page," but he denied ever sexually assaulting or attempting to sexually penetrate the victim against her will. Defendant also admitted that he told the investigating officer during his interview that "there [were] some things [he] never should have done" and that he "was wrong to pursue [the victim] in the way [he] did," but he explained that these admissions were referring to his and the victim's strained marital relationship rather than their sexual relationship.

Defendant was convicted and sentenced as previously described. This appeal followed.

## II. EVIDENTIARY CHALLENGES

Defendant raises several evidentiary challenges on appeal.[3] We review a trial court's evidentiary rulings for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). Such rulings will not be disturbed unless the court's decision falls outside the range of principled outcomes. *Id*. at 252. "The trial court necessarily abuses its discretion when it makes an error of law." *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 7. "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A preserved, nonconstitutional error in the admission or exclusion of evidence does not warrant reversal "unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted).

---

[3] Defendant properly preserved all of his evidentiary challenges for appellate review—except one, as discussed more thoroughly *infra*—by objecting to the evidence on the same grounds raised on appeal. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

## A. VOUCHING

Defendant first argues that the trial court erroneously admitted the testimony of the victim's friend and the victim's counselor because it was impermissible character evidence under MRE 608(a) and improperly vouched for the victim's credibility.

A witness is not permitted to comment on or vouch for the credibility of another witness because such testimony invades the province of the jury to decide the issues in the case. *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 62 (2022). Indeed, witness credibility is "to be determined by the jury," not witnesses. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). MRE 608(a),[4] however, allows for the admission of opinion testimony regarding a witness's credibility under certain circumstances:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

According to defendant, the trial court erred by admitting the testimony of the victim's friend and counselor because the testimony constituted opinion or reputation evidence and did not meet MRE 608(a)'s limitations. We disagree, however, with defendant's characterization of this testimony as opinion or reputation evidence to which MRE 608(a) applies. During their testimony, the victim's friend and the victim's counselor described how the victim appeared and reacted when she told them about problems that she was experiencing in her marriage. Their testimony was limited to when their conversations with the victim took place and what they observed during those conversations, particularly as it related to the victim's emotional state. Neither witness was allowed to testify about what the victim said to them during their conversations, and neither expressed their opinion as to the victim's character for truthfulness or even as to whether they believed that the victim was being truthful during their conversations. The record indicates that, given the victim's delayed disclosures, the prosecution offered this testimony to corroborate the victim's testimony regarding the sexual assaults and her subsequent decision to confide in her friend and counselor about those matters. While the testimony thus may have been relevant to the victim's credibility, it was not "evidence in the form of opinion or reputation" whose admission was governed by MRE 608(a).

For these same reasons, we likewise conclude that this testimony did not impermissibly vouch for or otherwise comment on the victim's credibility. Although the testimony may well have reflected on the victim's credibility, it did not offer the witnesses' opinions about the victim's credibility or character for truthfulness, and it properly left the determination of the victim's credibility within the province of the jury. See *Lowrey*, 342 Mich App at 109; *Dobek*, 274 Mich

---

[4] Our Supreme Court revised the Michigan Rules of Evidence effective January 1, 2024. See 512 Mich lxiii (2023). We cite the version of the rules in effect at the time of defendant's trial.

-4-

App at 71. Accordingly, the trial court did not abuse its discretion by admitting the testimony of the victim's friend and the victim's counselor. See *Thorpe*, 504 Mich at 251-252.

## B. ATTACK ON DEFENDANT'S CHARACTER

Defendant also argues that the victim's friend was erroneously permitted to testify about defendant's character, and her testimony impermissibly attacked defendant's character before he ever placed his character at issue.

At trial, the victim's friend recounted spending time with the victim and defendant in their home prior to their separation. The victim's friend described defendant as being sarcastic and "[k]ind of demeaning" on occasion to both her and members of his own family, but she also admitted that he was "sometimes nice." Defendant argues that this evidence was improperly admitted under MRE 404(a)(1). Because defendant failed to object to this testimony on this ground at trial, this issue is unpreserved. See *Thorpe*, 504 Mich at 252. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2019) (quotation marks and citation omitted). To obtain appellate relief, the defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show "that the error affected the outcome of the lower court proceedings." *Id*. And even when these three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citations omitted).

Defendant argues that the testimony of the victim's friend describing him as sarcastic and occasionally "[k]ind of demeaning" violated MRE 404(a)(1) because it attacked defendant's character before defendant had put his character at issue. MRE 404(a)(1) provides:

> (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

> (1) Character of Accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . . [.]

Even assuming the testimony of the victim's friend was improper under this rule, we fail to see how it amounted to plain error affecting defendant's substantial rights. The witness did not elaborate any further on this passing description of defendant as sarcastic and occasionally "[k]ind of demeaning," nor was she questioned further about it, and she also described defendant as "sometimes nice." And defendant has not shown how any prejudicial effect of this comment may have meaningfully contributed to the jury's determination of defendant's guilt, particularly in light of the ample other evidence regarding defendant's attempted sexual assault of his wife, including the victim's testimony and defendant's admissions during his interview with the investigating officer. Accordingly, defendant has not demonstrated any relief-worthy error on this basis. See *Allen*, 507 Mich at 614; *Carines*, 460 Mich at 763.

## C. EXCLUSION OF CHARACTER EVIDENCE

Defendant next argues that the trial court erroneously excluded the character testimony of his longtime friend regarding his demeanor and reputation in the community.

As mentioned previously, the admission of character evidence to prove an individual acted in conformity with that character trait on a specific occasion is prohibited, unless a listed exception applies. MRE 404(a). Here, defendant argues that his friend's testimony could be admitted under MRE 404(a)(1), which allows a defendant to offer evidence of his or her character that is pertinent to disprove his or her commission of the charged offense. See *People v Zitka*, 335 Mich App 324, 341-342; 966 NW2d 786 (2020). When a defendant offers evidence of a pertinent character trait, it must be in the form of reputation or opinion testimony. MRE 405(a).

As this Court has explained, "MRE 404(a)(1) permits the accused to introduce evidence of a 'pertinent' character trait, and a pertinent trait must relate to the charged crime." *Zitka*, 335 Mich App at 341. Relatedly, such evidence—like all evidence—is only admissible if the offering party has shown it is relevant. See *People v VanderVliet*, 444 Mich 52, 61-62; 508 NW2d 114 (1993) (stating that MRE 404 "presumes a showing of logical relevance" under MRE 401 and 402); MRE 401 (providing that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

At trial, defendant called his longtime friend to testify about defendant's generally peaceful demeanor and reputation for peacefulness in the community. The prosecution objected, and the trial court ruled that because "the only relevant question" regarding "[r]eputation testimony in a [CSC] case as to the character of the accused" was whether defendant was "a person of good sexual morals," the witness could not testify about defendant's demeanor or reputation outside of that context. Defendant argued that the testimony was appropriate in light of the victim's testimony describing him as "aggressive," but the court reiterated that whether defendant was "aggressive in other settings" was not relevant to the charged offense, and absent any relation to defendant's "good sexual morals," the reputation testimony constituted improper character evidence.

Defendant contends on appeal that this testimony would have refuted the victim's testimony that he forcibly attempted to vaginally penetrate her. Defendant, however, made no such argument in the trial court when offering the evidence. Indeed, beyond stating that the witness's testimony would contradict the victim's description of defendant as "aggressive," defendant did not make any offer of proof or otherwise elaborate on the substance of the witness's reputation or opinion testimony to demonstrate its admissibility under MRE 404(a)(1) and MRE 405(a)—nor has he attempted to do so on appeal.[5] See MRE 103(a)(2) (requiring a party seeking the admission of evidence to provide an offer of proof to make the substance of the evidence known

---

[5] Instead, at trial, defendant abandoned any further attempt to ask the witness about his character and continued with the direct examination by asking the witness about her relationship with the victim's friend, who testified on the prosecution's behalf, and her opinion on that witness's reputation for truthfulness.

to the court). And, as noted, the court did not exclude all potential testimony regarding defendant's demeanor or reputation—just that which had no relation to his sexual morals. Defendant has failed to show that the court abused its discretion in requiring this logical connection to the charged offenses in order for the testimony to be "pertinent" to this case and thus admissible. See *VanderVliet*, 444 Mich at 61-62; *Zitka*, 335 Mich App at 341-342.

## D. EVIDENCE OF RESISTANCE

Defendant also argues that the trial court abused its discretion by excluding the victim's testimony about training she received through her employment on how to manage and restrain individuals larger than herself during conflicts because the testimony was relevant to the element of force or coercion. Specifically, defendant contends that the victim's training was relevant to show that she was capable of resisting her husband when he forced himself on her, which was, in turn, relevant to her credibility as a witness.

When the topic of the victim's specialized training was brought up at trial, the prosecution objected on relevance grounds because the topic was raised only to show that the victim could have resisted defendant, but a victim is not required to resist a sexual assault in order for it to be an assault. The trial court agreed and excluded witness testimony—and later struck a portion of defendant's argument during closing argument—regarding the matter. The court noted that defendant was permitted to ask the victim "whether she resisted" during the charged conduct, but that it would be improper to ask the victim "[w]hether she ha[d] . . . some heightened ability" to resist because "there [was] no heightened duty or responsibility to resist [a sexual assault] regardless of what [the victim's] ability may be."

We see no error in the trial court's conclusion. It is apparent from the record that the only reason defendant offered this evidence was to show that the victim possessed the physical ability to resist his advances. MCL 750.520i plainly provides, however, that "[a] victim need not resist the actor in prosecution under [MCL 750.520b] to [MCL 750.520g]." See also M Crim JI 20.26. As the prosecution explained, this duly reflects the reality that victims may react in different ways to a sexual assault, depending on their circumstances. Whether the victim in this case had the ability to physically resist defendant's advances had no relevance to the elements of the charged offenses. Similarly, defendant has failed to show the matter was relevant for purposes of impeaching the victim's credibility. The victim, for instance, testified that she believed it was best for her to submit to defendant's sexual advances at times for the sake of her family; defendant could not cast meaningful doubt on that testimony by proving that she had been trained in techniques that allowed her to physically restrain someone larger than herself. Accordingly, defendant has not shown that the trial court abused its discretion by barring this testimony. See *Thorpe*, 504 Mich at 251-252.

## E. OTHER-ACTS EVIDENCE

For his final claim of evidentiary error, defendant argues that the trial court erred by allowing the victim to testify about other sexual assaults by defendant because the prosecution failed to provide proper notice—under either MCL 768.27b(2) or MRE 404(b)(3)—of its intent to introduce this other-acts evidence at trial.

Immediately before the victim took the stand to testify at trial, defendant moved to bar her from testifying about the hot-tub and flashlight incidents, arguing that they were other acts of uncharged criminal conduct and that there was no notice of intent given. Defendant also argued that the evidence was more prejudicial than probative of whether there was forced or coerced sexual conduct. The prosecution explained that the other-acts evidence was relevant because defendant raised the issue of consent. The trial court allowed admission of the evidence.

Defendant argues that the trial court erred by allowing these two prior incidents to be admitted as habit evidence under MRE 406 and as other acts under MRE 404(b). Regardless of its admissibility under those rules, however, the evidence plainly fell within the scope of MCL 768.27b(1). That statute provides for the admission of other-acts evidence relating to domestic violence or sexual assault "for any purpose for which it is relevant" so long as "it is not otherwise excluded under [MRE] 403." See also *People v Daniels*, 311 Mich App 257, 272; 874 NW2d 732 (2015) ("The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults *to prove any issue, even the character of the accused*, if the evidence meets the standard of MRE 403.") (quotation marks and citation omitted). " 'Sexual assault,' " as used in this statute, "means a listed offense as that term is defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722." MCL 768.27b(6)(c).

In this case, the victim described defendant grabbing her vagina and breasts in the hot tub on one occasion and, on another occasion, using a flashlight to see as he lifted her shirt and touched her breasts underneath her clothing. It is apparent that these prior acts, as described by the victim, both constituted a "sexual assault" under MCL 768.27b. See MCL 768.27b(6)(c); MCL 28.722(i) (defining a "[l]isted offense" as "a tier I, tier II, or tier III offense") and (r)(*v*) (defining "[t]ier I offense" to include criminal sexual contact under MCL 750.520e); MCL 750.520a(q) (defining "[s]exual contact" to include, in relevant part, "the intentional touching" of a victim's "intimate parts" or "of the clothing covering the immediate area of [a] victim's . . . intimate parts" if the "touching can reasonably be construed as being for the purpose of sexual arousal or gratification" or "done for a sexual purpose"); MCL 750.520a(f) (defining "[i]ntimate parts" to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being"). MCL 768.27b therefore governed the admission of these prior acts, see *People v Mack*, 493 Mich 1, 2-3; 825 NW2d 541 (2012), and defendant had not disputed its substantive admissibility under that statute.[6]

Defendant's argument, as it relates to MCL 768.27b, is ultimately premised on a lack of notice. MCL 768.27b(2) requires the prosecution to give notice to the defendant regarding the evidence that it intends to introduce under the statute "not less than 15 days before the scheduled

---

[6] Nor would we see merit in any such challenge, had defendant attempted to raise it. The other acts revealed defendant's repeated attempts to have sexual contact with the victim even though she had expressly told him that she did not want any sexual contact with him, and were thus plainly probative of defendant's commission of the charged offenses and his defense theory of consent. See *Daniels*, 311 Mich App at 272-273. And we see no basis to conclude that the evidence's highly probative value would have been substantially outweighed by the danger of unfair prejudice, such that MRE 403 would bar its admission. See *id.* at 273-274.

date of trial or at a later time as allowed by the court for good cause shown." The statute does not require that notice be provided in any particular method. Compare MCL 768.27b(2) (requiring notice) with MRE 404(b)(2) (requiring "written notice" or oral notice on the record). Defendant claims that he was not notified of the prosecution's intent to introduce these other acts as evidence at trial until the prosecution's opening statement, but the record in this case reflects that defendant received notice from the prosecution well before this. Indeed, the prosecution filed a notice of intent to introduce these other acts as evidence at trial in February 2022, approximately eight months prior to defendant's trial.[7] Furthermore, the substance of these two particular other acts was known to defendant since discovery, as was their relevance to this case, including any claim of consensual sexual activity. Defendant does not explain how he would have proceeded differently with earlier or more notice or why the purportedly deficient notice prevented him from refuting these other acts, nor does he otherwise explain how it is more probable than not that the alleged error was outcome determinative. See *Lukity*, 460 Mich at 495-496. We see no grounds for relief as to this issue.

## III. SUFFICIENCY OF THE EVIDENCE

We turn next to defendant's challenge to the sufficiency of the evidence to support his conviction. Defendant contends that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he used force or coercion to accomplish the alleged assault with intent to commit CSC involving sexual penetration.

In determining whether the evidence is sufficient to sustain a conviction, we review the record evidence de novo in the light most favorable to the prosecution and consider whether it was sufficient "to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (quotation marks, citations, and alteration omitted). It is the jury's role, as factfinder, to determine "the weight of the evidence [and] the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Indeed, "a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

According to defendant, the evidence presented at trial showed only that he engaged in conduct "merely incidental to an act of sexual penetration," and was thus insufficient to demonstrate "the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual

---

[7] Although this notice of intent was withdrawn approximately one month later, the prosecution clarified at oral argument before this Court that the decision to do so was related to the bifurcation of this matter from other criminal matters pending at that time rather than to any change of its intent to introduce these other acts at trial.

penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002).[8] The record, however, does not support this argument. Both the victim and defendant testified that defendant attempted to initiate sex with the victim by touching her as they lay in bed. The victim testified that she then told defendant that she would not have sex with him, but defendant nonetheless got on top of her and attempted to penetrate her vagina with his penis. The victim flipped her body back and forth to get away from defendant, but defendant placed his arms on either side of her body and pressed his bodyweight into her so that she was unable to do so. Defendant ignored the victim's demands that he stop and continued to pin her down and attempt to penetrate her vagina, and it was only when defendant got off of her to go to the bathroom after ejaculating that the victim was able to get up and leave.

Although defendant testified that he allowed the victim to get out of the bed as soon as she expressed that she did not wish to have sex, it was the province of the jury to assess the credibility of the victim's and defendant's respective accounts. See *Kanaan*, 278 Mich App at 619. Moreover, a victim's testimony need not be corroborated by other evidence to be sufficient. MCL 750.520h. The evidence, when viewed in a light most favorable to the prosecution, was more than sufficient to permit a rational jury to conclude beyond a reasonable doubt that defendant's actions were more than those "merely incidental to an act of sexual penetration," but instead amounted to "the use of force against [the] victim . . . to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *Carlson*, 466 Mich at 140; see also *Harris*, 495 Mich at 126. We see no merit in this claim.

## IV. PROSECUTORIAL MISCONDUCT

Lastly, defendant contends that the prosecution made several remarks during its closing and rebuttal argument that amounted to misconduct, thereby depriving him of a fair trial. "[A] defendant must contemporaneously object and request a curative instruction" to preserve an issue involving prosecutorial misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant objected to the prosecution's mention of "domestic violence victims" during its closing argument, but he failed to object to any other alleged instances of prosecutorial misconduct now raised on appeal. Thus, this issue is preserved as to the first claimed instance of misconduct but not preserved as to the others. See *id*.

We review preserved claims of prosecutorial misconduct "de novo to determine whether the defendant was denied a fair and impartial trial," but we review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Id*. Claims of prosecutorial misconduct are reviewed on a "case-by-case basis" by examining pertinent portions of the record and evaluating "the prosecutor's remarks in context." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted). "This Court also must review the prosecution's comments in light of the arguments made by defense counsel and the relationship they bear to the evidence admitted at trial." *Wisniewski*, ___ Mich App at ___; slip op at 13 (quotation marks and citations omitted). Prosecutors are generally afforded "great latitude

---

[8] Defendant does not otherwise take issue with the sufficiency of the evidence to sustain his conviction.

regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Mullins*, 322 Mich App at 172 (quotation marks and citation omitted). We will not reverse where the alleged prejudicial effect of the prosecution's conduct could have been cured by a timely instruction. *Bennett*, 290 Mich App at 476.

As to defendant's preserved claim of error, defendant takes issue with the following remark by the prosecution during closing argument: "The fact that [the victim] doesn't leave right away . . . , think of any domestic violence victim that stays for marriage, stays for children." According to defendant, such commentary was not properly based on facts in evidence. The record, however, shows otherwise. The victim testified that she remained with defendant despite the assaults for the sake of the children, and defendant also testified during cross-examination that "one of [the victim's] main priorities was always the kids[.]" It was therefore reasonable for the prosecution to argue, on the basis of this evidence and all reasonable inferences arising therefrom, that the victim opted to remain married to defendant, despite the assaults, for these reasons. See *Mullins*, 322 Mich App at 172. It is also clear from the record that the prosecution's remark was in response to defendant's assertion during closing argument that, if the victim's allegations against him were true, she would have left the marital home sooner. See *Wisniewski*, ___ Mich App at ___; slip op at 13; see also *People v Isrow*, 339 Mich App 522, 529-530; 984 NW2d 528 (2021) (noting that the prosecution "may comment on [its] own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes") (quotation marks and citation omitted). Defendant has not shown misconduct as to this remark. See *Bennett*, 290 Mich App at 475.

As to defendant's unpreserved claims of error, defendant first argues that the prosecution improperly argued that defendant's sexual assaults were attempts to exert "power and control" over the victim because there was no testimony regarding power or control. It is clear, however, that the prosecution, in stating that "this . . . was a case about power and control," was merely summarizing its theory of the case based on the evidence presented—namely, about the increasingly aggressive nature of defendant's sexual behavior toward the victim and his efforts to force her to have a sexual relationship with him despite her repeated refusals. The prosecution may argue all reasonable inferences from the presented evidence as it relates to its theory of the case, and the evidence presented in this case permitted the reasonable inference that, by his actions, defendant intended to exert power and control over the victim. See *Mullins*, 322 Mich App at 172.

Defendant next argues that the prosecution's statements about defendant's reaction to learning of the victim's allegations were not supported by the evidence presented at trial and constituted a personal opinion of defendant's guilt, which the prosecution was not permitted to provide. See *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2016). In its closing argument, the prosecution pointed out that defendant was not "shocked or surprised" when confronted with the victim's allegations during his interview with the police, nor did he deny the allegations at that time. As the record makes clear, these statements were all derived from the evidence at trial. Defendant admitted during cross-examination that he never denied the victim's allegations during his interview, and the investigating officer testified that although defendant appeared surprised when he first spoke to defendant at defendant's house and possibly at the start of defendant's interview, defendant did not appear surprised when confronted with the victim's allegations during the interview. Moreover, relevant portions of defendant's interview were

-11-

played for the jury so that it could see defendant's initial reaction to the victim's allegations, and defendant could be heard on the video admitting that what he did to the victim was "wrong," "stupid," and "selfish" and that there were "some things [he] should never have done." The prosecution thus properly argued facts in evidence and did not improperly assert its own belief as to defendant's guilt. See *Mullins*, 322 Mich App at 172; *Johnson*, 315 Mich App at 201.

Defendant also argues that the prosecution made a statement during rebuttal that suggested that he had committed more sexual assaults than the two charged offenses, which was improper because the victim never provided such testimony during trial. During its rebuttal, the prosecution referred to the two charged offenses and stated, "[S]exual assault happens so much in their marriage that she doesn't remember every single one and is describing only two." As its context makes clear, this statement was in response to defendant's attempt during closing argument to impugn the victim's credibility in recounting the charged offenses, and the prosecution was permitted to argue that, based on the admitted evidence, the victim rather than defendant was worthier of belief. See *Isrow*, 339 Mich App at 529-530; *Dobek*, 274 Mich App at 66-67. And the prosecution's responsive comments were grounded in testimony presented at trial. See *Mullins*, 322 Mich App at 172. The victim testified in detail about the hot-tub and flashlight incidents, both of which, as previously discussed, plainly constituted sexual assaults. The victim also testified that by 2017, nearly all of her sexual encounters with defendant resulted from defendant forcing himself on her or her giving into his demands for sex to appease him and avoid his anger. Accordingly, defendant has not shown that these remarks amounted to plain error. See *Carines*, 460 Mich at 763.

Defendant also takes issue with the prosecution's statement that "[y]ou also never heard the Defendant deny the, the creepy behavior where he's lurking for her with a flashlight . . . ." Defendant's challenge is twofold. Defendant argues that the remark was improper because he was not charged with any offense involving the use of a flashlight and was therefore not obligated to "take the stand and deny an allegation." Defendant also argues that the remark was improper because it was clearly an expression of the prosecution's own belief about defendant's guilt.

Defendant, however, again takes the remark out of context. In full, the prosecution stated: "You also never heard the Defendant deny the, the creepy behavior where he's lurking for her with a flashlight when [the victim was] trying to sleep in other areas of the home to get away from him. What makes sense? [The victim] has absolutely no motivation [to lie] here." Defendant, of course, was in no way obligated to testify at trial to deny an allegation. But defendant willingly chose to testify on his own behalf and, by doing so, put his credibility at issue just like every other testifying witness. See *People v Clary*, 494 Mich 260, 278-279; 833 NW2d 308 (2013). Moreover, during her testimony, the victim stated that there were instances following the assault in which defendant did "creepy things like try to take [her] clothes off . . . and looking down [her] shirt with a flashlight" as she slept in another room. Defendant, for his part, acknowledged during his testimony that the victim began sleeping in another room following the alleged assault. The prosecution was permitted to ask the jury to compare the victim's and defendant's respective testimony and motives when considering who was a more credible witness and to argue from the facts presented at trial that defendant, as a testifying witness, was "unworthy of belief." *Dobek*, 274 Mich App at 67. There is nothing to suggest that the prosecution, in doing so here, drew any unreasonable inferences from or made impermissible commentary on the presented evidence. See *Mullins*, 322 Mich App at 172; see also *Isrow*, 339 Mich App at 529-530.

-12-

Finally, defendant argues that the prosecution mischaracterized the video clips of his interview with the police during its closing argument by stating that defendant "dodge[d]" the investigating officer's questions. Defendant argues that this mischaracterization improperly suggested that the prosecution had some special knowledge of defendant's truthfulness. The prosecution may not mischaracterize the evidence presented during trial, nor may it suggest that it "has some special knowledge concerning a witness' truthfulness[.]" *Isrow*, 339 Mich App at 529 (quotation marks and citation omitted). When reviewing the prosecution's remark in context, however, it is clear that the prosecution did neither. The prosecution, in relevant part, stated:

> [S]omething of note from the Defendant's interview is that [the investigating officer] asked the Defendant what, what do you mean? What happened? Defendant could have clarified at that point that he did not rape or force himself on [the victim], but then he dodges the question and starts talking about the girls['] counseling office. And I think that you may have noticed that he did that on the stand, too. He finds ways to dodge the issue. Doesn't answer questions straightforward.

The prosecution then asked the jury to compare the credibility of the victim and defendant based on both parties' testimony, the investigating officer's testimony, and the video clips of defendant's interview presented during trial. As previously stated, defendant put his credibility at issue by testifying on his own behalf, see *Clary*, 494 Mich at 278-279, and the prosecution was permitted to argue from the facts presented at trial that defendant, as a testifying witness, was "unworthy of belief," *Dobek*, 274 Mich App at 67. The prosecution was also permitted to comment on the victim's credibility based on the evidence presented, given the conflicts between her and defendant's testimony and given that defendant's guilt depended on which witness the jury found to be more credible. See *Isrow*, 339 Mich App at 529-530. The record makes clear that the prosecution was not mischaracterizing the video clips or referencing some special knowledge it had about defendant's truthfulness but was instead commenting on the presented evidence and the reasonable inferences that could be drawn from it. See *id*.

Defendant has not shown any basis for relief on this issue.[9]

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani

---

[9] Defendant also argues that the cumulative effect of some or all of his alleged errors entitles him to a new trial. To the extent any of his claims of error have merit, however, any prejudice from them, even when aggregated, was minimal and well short of what would be needed to warrant reversal, given the significant, untainted evidence of his guilt. See *People v Butsinas*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364778); slip op at 29.